Edward G. HOWARD, Plaintiff–
Appellant,

and

Federal Deposit Insurance
Corporation, Plaintiff,

v.

Said HADDAD, Defendant–Appellee,

and

James H. McMullin, Defendant.

No. 91–2584.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1991.

Decided April 17, 1992.

Douglas Leigh Pierson, Vienna, Va., for plaintiff-appellant.

Ana T. Barnett, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, Fla., for defendant-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.

## OPINION

POWELL, Associate Justice:

At issue in this appeal is whether the district court properly dismissed, on summary judgment, federal and state securities claims brought by Edward Howard against his former golfing partner, Said Haddad. As we conclude that the federal claim is time-barred and that Howard failed to establish a prima facie case under the Virginia Securities Act, we affirm.

### I

Howard met Haddad during a plane trip in 1967. At that time, Howard was an independent sales representative for sever-

al defense contractors and Haddad was a member of the board of directors of Trust Bank, a state-chartered bank operating in Florida. After their initial meeting and until the filing of this complaint, the two played golf together a few times each year—generally whenever Howard was visiting his mother in Florida. These golf games represented the extent of their friendship, with one exception. In February 1986, at Howard's invitation and expense, the two took a week-long vacation together in Hawaii.

During a golf outing in September 1986, Howard claims that Haddad induced him to invest in Trust Bank. The inducement, as recalled by Howard, was triggered by the following circumstances:

Q. How was it [the invitation to invest in the bank] presented to you?

A. That Mr. Haddad was a director of this bank and it looked like a good investment, and he thought that he could get me some shares in it.

.    .    .    .    .

Q. Now, in this meeting that took place in Virginia in September of 1986 ... exactly what is it that Mr. Haddad told you to induce you to invest?

A. That it was a growing bank, and that it was [a] good investment.

(App. at 341–43). Relying on this conversation, Howard bought 60,000 shares of Trust Bank stock on October 1, 1986. Nine days later, he bought an additional 40,000 shares of the bank's stock. The purchases altogether cost $500,000.[1] Three months after these purchases, Howard joined Trust Bank's board of directors. He became chairman of Trust Bank's board in October 1987, and retained that position until the bank closed in January 1988.

In the aftermath of Trust Bank's failure, Howard filed a complaint against Haddad, the amended version of which charged violations of § 10(b) of the Securities and Exchange Act of 1934 and § 13.1–522 of the Virginia Securities Act.[2] The Federal Deposit Insurance Corporation (FDIC) subsequently filed motions to intervene and to dismiss the complaint. As liquidator of Trust Bank, the FDIC argued that it controlled all causes of action for harm done to the bank. The district court granted both motions. The court of appeals affirmed the order granting intervention by the FDIC, but reversed the dismissal order and remanded the action for further proceedings. 916 F.2d 167 (4th Cir.1990). .  ·

On remand Haddad successfully moved for summary judgment against Howard. Among other things, the district court determined that, as to both counts, Howard had failed to establish that the alleged misrepresentations were material or that Haddad had a duty to disclose relevant information to Howard. On this appeal, Howard argues that material factual disputes precluded summary disposition of these issues. Haddad responds that not only has Howard failed to establish a prima facie case under either statute, but also that his federal claim is time-barred as a result of two recent Supreme Court precedents. We first address the § 10(b) claim.

II

■  Soon after the district court dismissed Howard's § 10(b) claim, the Supreme Court decided *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——; 111 S.Ct. 2773, 115 L.Ed.2d

---

1. Haddad, it is relevant to note, purchased 100,000 shares of Trust Bank stock during this same time period.

2. Howard originally filed an eight-count complaint against Haddad, four other directors of Trust Bank, and a limited partnership, asserting claims under § 10(b) and § 20 of the Securities and Exchange Act of 1934, § 13.1–522 of the Virginia Securities Act, Virginia common law (fraud), § 772.11 of the Florida Civil Theft Act, and the Racketeer Influenced and Corrupt Organization Act. The common law fraud claim was dismissed in view of Virginia's one-year statute of limitations. Subsequently Howard amended his complaint, retaining claims against Haddad and co-director James H. McMullin under § 10(b), the Virginia Securities Act, and the Florida Civil Theft Act. The claims against McMullin have been dismissed, and the Florida Civil Theft Act claim has been abandoned. Thus, only the federal and Virginia securities claims remain, and Haddad is the only defendant left in the case.

321 (1991), and *James B. Beam Distilling Co. v. Georgia,* — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). *Gilbertson* establishes a uniform statute-of-limitations period for a § 10(b) action. It requires the action to "be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Gilbertson,* 111 S.Ct. at 2782.[3] Notably, *Gilbertson* applied this limitations period retroactively. *Id. Beam,* in turn, states that when the Court applies a new rule of law retroactively to the case before it, that rule should be applied retroactively to all pending actions. *Beam,* 111 S.Ct. at 2447–48.[4] Consequently, because *Gilbertson* applied retroactively the § 10(b) limitations rule that it announced, *Beam* requires us to apply that rule to this case.[5]

Under *Gilbertson,* then, the question is whether Howard commenced his § 10(b) action "within one year after the discovery of the facts constituting the violation." 111 S.Ct. at 2782. The theory of Howard's amended complaint was that Haddad misrepresented several material facts[6] and failed to mention others[7]. The one year discovery limitations period thus began running either when Howard had notice of these facts or when, exercising reasonable diligence, he would have discovered them. *Davis v. A.G. Edwards & Sons, Inc.,* 823 F.2d 105, 107 (5th Cir.1987).

Howard's own testimony reveals that by June 1987 he had discovered the information underlying his § 10(b) claim— more than fifteen months before he filed his complaint on September 28, 1988. Having become a member of Trust Bank's board, Howard attended his first board meeting in January 1987. At that time, he learned that the bank was "not a good investment." By May 1987, his deposition testimony reveals, he became aware of the bank's prior losses, its unstable financial condition, and the fact that it was operating under a Memorandum of Understanding from the Florida Department of Banking. Also relevant is the fact that Howard's common law fraud count was dismissed on the ground that it was barred by a one-year statute of limitations.

Ordinarily we would remand the case to the district court to allow it to consider this issue in the first instance. Yet that course is unnecessary here. Howard had an opportunity to rebut this argument in his appellate brief and at oral argument. Yet in neither forum did he present a sustainable argument that material facts remain undecided on this point. In a four-sentence paragraph in his reply brief, he stated only that the "applicability" of *Gilbertson* "has not been fully decided at this time" and

**3.** Prior to *Gilbertson,* the Fourth Circuit applied the state statute of limitations that '"most clearly addresses the same or similar policy considerations as are addressed by the federal right being asserted.'" *Gurley v. Documation, Inc.,* 674 F.2d 253, 258 (4th Cir.1982) (quoting *O'Hara v. Kovens,* 625 F.2d 15, 18 (4th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981)). That principle required application of the two-year limitations period used under Virginia's Blue Sky Laws. *Id.* at 259.

**4.** The opinion of the Court was written by Justice Souter and joined by Justice Stevens. Justice White concurred in the judgment, observing that there is "no precedent in civil cases applying a new rule to the parties in the case but not to others similarly situated." *Id.* 111 S.Ct. at 2448 (White, J., concurring). Justice Scalia, joined by Justices Marshall and Blackmun, also concurred in the judgment, stating that he would always give retroactive effect to new rules of civil law, it being beyond the Court's "power" to do otherwise. *Id.* at 2450–51 (Scalia, J., concurring).

**5.** One other court of appeals has reached a similar conclusion. In *Boudreau v. Deloitte, Haskins & Sells,* 942 F.2d 497, 498 (8th Cir.1991), the Eighth Circuit determined that under *Beam* it "was compelled to apply *Gilbertson* retroactively."

**6.** According to the amended complaint, Haddad made the following misrepresentations to Howard: Trust Bank was "growing," "doing well," and would be a "good investment" for Howard.

**7.** According to the amended complaint, Haddad omitted to state the following material facts, among others: the bank had never operated profitably; it had suffered substantial losses in each year of existence (1984 and 1985); it would have significant losses in 1986; the bank's assets were of a poor quality; the bank was operating under a "Memorandum of Understanding" with the Florida Department of Banking dated July 1985; and the bank needed to raise additional capital through the sale of stock.

that application of *Gilbertson* requires a preliminary "factual determination." His responses to questions during oral argument were to the same effect. *Beam* leaves no doubt about the retroactive application of *Gilbertson*, which is an issue of law. And given this record, particularly Howard's own testimony, it can be determined as a matter of law that Howard discovered the facts constituting the alleged violation more than one year before filing his claim. We affirm the dismissal of Howard's § 10(b) claim on the ground that it is time-barred.[8]

### III

Howard next contends that he has established the elements of a claim for relief under either subsection A or C of the Virginia Securities Act. *See* Va.Code Ann. § 13.1–522.[9] The parties agree that a claim for relief under § 13.1–522(a), as under its federal counterpart (section 10(b)), requires a showing that the alleged misrepresentations[10] were material. We agree with the district court that these general statements were not. At most they amounted to "puffery," which lacks the materiality essential to a securities fraud allegation.[11] Attempting to counter this point, Howard argues that the statements were material nonetheless given "the surrounding circumstances" in which they were made.

We agree that the atmosphere in which statements are made may bear on their materiality. *See Elkind v. Liggett and Meyers, Inc.*, 635 F.2d 156, 164 (2d Cir. 1980). Yet in this case context adds no force to Howard's argument. The conversation took place on a golf course between casual acquaintances, and concerned a bank about which Howard had no prior knowledge. In short, the context in which the statements were made undermines—it does not support—Howard's theory of materiality.

Howard also has failed to establish that he shared a fiduciary relationship with Haddad, a requirement for imposing a duty on him to disclose material information. *See Chiarella v. United States*, 445 U.S. 222, 228, 235, 100 S.Ct. 1108, 1114, 1118, 63 L.Ed.2d 348 (1980). He has not offered a convincing rationale why, or any case authority under which, such a relationship would be deemed to have arisen. Nor can we envision any that would encompass a casual acquaintance like this one.

Howard also brought his claim under § 13.1–522(b). That provision imposes liability on "[e]very person who materially participates or aids in a sale made by any person under subsection (a), or who directly or indirectly controls any person so liable." Va.Code § 13.1–522(b). The flaw here is that Howard fails to account for the vicarious nature of liability covered by the section. He offers no plausible theory under which Haddad could be *secondarily* lia-

8. Alternatively, for the reasons stated in part III, we affirm the dismissal on the grounds that, as a matter of law, the misrepresentations were not material and Haddad had no fiduciary duty to disclose information about the bank during their September 1986 conversation.

9. The allegations in the amended complaint concern activities in 1986, prior to the adoption of subsections (A) and (C) of § 13.1–522. The slightly different forerunner of subsection (C) was § 13.1–522(b). We will assume, for the purposes of this appeal, that Howard intended to rely upon subsection "(B)." The identical forerunner of subsection (A) was subsection "(a)."

10. Haddad told Howard: (i) "that he was a director"; (ii) "that the Bank was growing"; (iii) "that the stock was a good investment"; (iv) "that the stock was a good opportunity"; and (v)

"that Haddad would have difficulty [ ] securing stock for Mr. Howard to purchase."

11. *See, e.g., Zerman v. Ball*, 735 F.2d 15, 21 (2d Cir.1984) (broker's characterization of stock as "marvelous" did "not constitute [a] representation[ ] of fact that could be actionable under the securities laws"); *Newman v. Rothschild*, 651 F.Supp. 160, 163 (S.D.N.Y.1986) ("Courts have recognized a category of statements by brokers which are better characterized as 'puffery' than as material misstatements. [When these statements are made] the reasonable investor is presumed to understand that this is nothing more than 'the common puff of a salesman,' not a material factual misstatement."); *Darvin v. Bache Halsey Stuart Shields, Inc.*, 479 F.Supp. 460, 462, 464 (S.D.N.Y.1979) (statement that plaintiff would be "crazy" not to sell his stock was not actionable).

ble—liable, that is, as an aider/abettor or as a "control" person of a *primary* violator of the statute. This claim also was properly dismissed.

AFFIRMED.