**Adolph P. RAAB; Lenora Isaacs, Plaintiffs–Appellants,**

v.

**GENERAL PHYSICS CORPORATION; Martin M. Pollak; Roger E. Klose; John C. McAuliffe, Defendants–Appellees.**

No. 93–1164.

United States Court of Appeals, Fourth Circuit.

Argued July 13, 1993.

Decided Aug. 26, 1993.

---

Neil Lewis Selinger, Lowey, Dannenberg, Bemporad & Selinger, P.C., New York City, argued (William R. Weinstein, Lowey, Dannenberg, Bemporad & Selinger, P.C., Michael P. Fuchs, Lawrence D. Levit, Wolf, Popper, Ross, Wolf & Jones, New York City, Tydings & Rosenberg, Baltimore, MD, on brief), for plaintiffs-appellants.

Robert Michael Romano, Morgan, Lewis & Bockius, New York City, argued (George G. Yearsich, John M. Vassos, Morgan, Lewis & Bockius, New York City, Francis B. Burch, Jr., Piper & Marbury, Baltimore, MD, on brief), for defendants-appellees.

Before WILKINSON, HAMILTON, and LUTTIG, Circuit Judges.

## OPINION

WILKINSON, Circuit Judge:

In this case, we must address the impact of the securities laws on a company's predictions of its future business prospects. We hold that the prognostications here are not the specific guarantees necessary to make such predictions material, and accordingly, we affirm the district court's dismissal of the complaint.

### I.

General Physics Corporation provides personnel training and technical support services to the domestic nuclear power industry. In addition, the company's DOE Services Group provides services to the Department of Energy (DOE) and to the prime contractors who generally manage and operate DOE nuclear weapons production and waste processing sites. In a 1991 public offering, the company sold four million shares; those shares are traded on the New York Stock Exchange.

On February 20, 1992, Goldman Sachs issued a six page research report recommending the purchase of General Physics' stock. The report cautioned, however, that:

Fourth-quarter results were adversely impacted by a slowdown in the procurement of new contracts by the Department of Energy (DOE). The decision last fall to reduce U.S. nuclear weapons has Congress and the DOE reevaluating the nuclear weapons complex. As a result, the procurement of some contracts has been delayed. *General Physics has indicated that the pace of contract awards has increased significantly in recent weeks.*

The report does not identify a source for the underlined statement. On that same day, General Physics announced record revenues for 1991. That announcement did not mention the slowdown in fourth-quarter 1991 earnings and first-quarter 1992 earnings.

On March 30, 1992, General Physics issued its 1991 Annual Report to Shareholders and filed its 1991 Form 10–K with the SEC. These documents did not discuss the slow-

down in DOE awards. The Annual Report represented that:

(1) "Regulatory changes resulting from [accidents at Three Mile Island and Chernobyl], combined with the rising importance of environmental restoration and waste management, have created a marketplace for the DOE Services Group with an expected annual growth rate of 10% to 30% over the next several years";

(2) "Helping the DOE prime contractors respond to these directives is expected to be an increasing segment of General Physics' business in 1992"; and

(3) "With experienced management, engineers, scientists and technicians in place, the DOE Services Group is poised to carry the growth and success of 1991 well into the future."

In a press release that same day, General Physics announced that first-quarter earnings were likely to be half of analysts' estimates. The company stated that "[t]he lower than anticipated earnings resulted primarily from administrative delays in contract awards by [DOE] and the resultant increased overhead costs associated with retaining professional staff pending contract awards by the DOE," but that it believed "conditions in the 1st quarter are temporary and that results during the remainder of the 1992 [sic] should be in line with analysts' current projections."

On June 18, 1992, General Physics issued another press release disclosing that second-quarter earnings would be less than expected because of continuing delays in the award of DOE contracts and costs resulting from the need to retain professional staff pending new contracts. On June 19, General Physics' share price fell thirty-six percent, from $9.125 to $5.875.

Plaintiffs filed their first complaint on June 19. This complaint was later withdrawn and an amended one filed August 14, 1992. The action was brought on behalf of a class of all purchasers of General Physics stock from February 20 to June 18, 1992. Plaintiffs alleged violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, claiming that General Physics artificially inflated its stock price by not disclosing the full impact of the slowdown in DOE contract awards. The district court dismissed the complaint with prejudice, holding that plaintiffs had failed to plead specific facts supporting their allegations of fraud. Plaintiffs now appeal.

## II.

Plaintiffs claim that General Physics misled share purchasers through (A) Goldman Sachs' statement that the pace of contracting had increased in the weeks before the February 20 report; (B) the Annual Report's failure to disclose the contracting slowdown's adverse impact on earnings and the Report's predictions of growth for the DOE group; (C) the statements in the March 30 press release that the contracting slowdown was administrative and temporary and the prediction in that press release that earnings would be consistent with analysts' expectations for the final three quarters of 1992. We will address these allegations in turn.

## A.

We do not think that plaintiffs have pled the specific facts required by Fed. R.Civ.P. 9(b) from which the Goldman Sachs research report can be attributed to General Physics, and General Physics cannot be held liable for the independent statement of a third party. The complaint alleges that "the report went on to quote General Physics." The report, however, does not quote General Physics. It says only that "General Physics has indicated." More importantly, nowhere does the complaint plead with any specificity who allegedly supplied this information to Goldman Sachs, how it was supplied, or how General Physics could have controlled the content of the statement. The securities laws require General Physics to speak truthfully to investors; they do not require the company to police statements made by third parties for inaccuracies, even if the third party attributes the statement to General Physics. Without control over Goldman Sachs' report, any statement made by General Physics personnel could be taken out of context, incorrectly quoted, or stripped of important qualifiers. Plaintiffs have thus

failed to plead facts from which it could be inferred that General Physics exercised the kind of control over the Goldman Sachs report that would render it liable for statements made therein. *See Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 163 (2d Cir. 1980) (no liability absent allegations that company "sufficiently entangled itself with the analysts' forecasts to render those predictions 'attributable to it' ").

### B.

■ Plaintiffs next attack the 1991 Annual Report's failure to disclose the adverse impact of the contracting slowdown on first-quarter 1992 earnings and its predictions of growth in the market for the DOE group. Plaintiffs claim that General Physics had a duty to reveal the adverse trend for DOE contracts in order to keep its optimistic predictions of future growth from becoming misleading.

We disagree. Omitting the contract slowdown from the Annual Report is not actionable because the contemporaneous press release of March 30, 1992 informed the market of a slowdown in DOE contracting awards. Plaintiffs rely on fraud on the market to establish reliance in this case; unfortunately for them, the presumption that the market price has internalized all publicly available information cuts both ways. The information available to the market included not only the Annual Report, but also the March 30 press release. "[I]n a fraud on the market case, the defendant's failure to disclose material information may be excused where that information has been made credibly available to the market by other sources." *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1115 (9th Cir.1989); *see also Basic, Inc. v. Levinson*, 485 U.S. 224, 248–49, 108 S.Ct.

978, 992, 99 L.Ed.2d 194 (1988) (presumption of fraud rebutted when market has access to accurate information). The "other source" in this case was the press release; if the contracting slowdown was material, the market was aware of it, and the price of the shares reflected it. *See Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256, 1260 (4th Cir. 1993).

■ Moreover, the 1991 Annual Report was about 1991's results, not 1992's prospects. The company obviously had a duty to accurately report the 1991 results. But General Physics' accurate reporting of its past results did not then require the company to speculate on the effect that a contract slowdown at DOE in 1992 would have on its future earnings. *See In re Convergent Technologies Sec. Litig.*, 948 F.2d 507, 513–14 (9th Cir.1991) (rejecting plaintiffs' contention that accurate reporting of past results "misled investors by implying that [the company] expected the upward first quarter trend to continue throughout the year").

■ Such predictions as General Physics did make in its Annual Report about future growth are hardly material. The statements in the 1991 Annual Report that plaintiffs challenge include "[r]egulatory changes ... have created a marketplace for the DOE Services Group with an expected annual growth rate of 10% to 30% over the next several years" and "the DOE Services Group is poised to carry the growth and success of 1991 well into the future." "Soft," "puffing" statements such as these generally lack materiality because the market price of a share is not inflated by vague statements predicting growth. *See, e.g., Howard v. Haddad*, 962 F.2d 328, 331 (4th Cir.1992); *Lewis v. Chrysler Corp.*, 949 F.2d 644, 652–53 (3d Cir.1991).[1]

---

1. In following the holding of *Howard* that commonplace commercial puffery lacks, as a matter of law, the materiality to be actionable, we note the distinction between this action and the recent decision in *Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256 (4th Cir.1993), that reversed in part a grant of summary judgment in an action for securities fraud. Among the statements challenged by plaintiffs in *Cooke* were representations of specific business projects including "negotiations with an insurance company that would act as a guarantor" on the company's loans and a repurchase by the company of some 400,000 shares of its own stock "because it was an attractive investment." *See* 998 F.2d at 1259. The *Cooke* panel decided that the likelihood of a misleading misrepresentation was greater in such circumstances than in a case where soft forecasting was all that was involved. Moreover, the *Cooke* court had no reason to address: (i) whether the complaint satisfied Rule 9(b)'s pleading requirements; (ii) whether soft "puffing" statements are actionable in themselves; or

The whole discussion of growth is plainly by way of loose prediction, and both the range of rates cited, as well as the time for their achievement, are anything but definite. No reasonable investor would rely on these statements, and they are certainly not specific enough to perpetrate a fraud on the market. Analysts and arbitrageurs rely on facts in determining the value of a security, not mere expressions of optimism from company spokesmen. The market gives the most credence to those predictions supported by specific statements of fact, and those statements are, of course, actionable if false or misleading. However, "projections of future performance not worded as guarantees are generally not actionable under the federal securities laws." *Krim v. Banctexas Group, Inc.*, 989 F.2d 1435, 1446 (5th Cir.1993) (citing *Friedman v. Mohasco Corp.*, 929 F.2d 77 (2d Cir.1991)). Statements such as "the DOE Services Group is poised to carry the growth and success of 1991 well into the future" hardly constitute a guarantee.

Notwithstanding our holding that the allegedly false predictions here are not material, we recognize that expressions of belief or opinion concerning *current* facts may be material. *See Virginia Bankshares, Inc. v. Sandberg,* —— U.S. ——, 111 S.Ct. 2749, 2757–60, 115 L.Ed.2d 929 (1991). We do not believe, however, that this materiality extends so easily to opinions on uncertain future events. In *Virginia Bankshares,* the Supreme Court addressed the materiality of directors' statements that a merger price was "fair" and that it offered "high" value to minority shareholders. The Court held that the statements were material because the plaintiffs provided evidence showing that the assumptions offered by the directors to support those conclusions were arguably false. *See id.* at ——, 111 S.Ct. at 2759. Because these assumptions were false, the "plaintiff [was] permitted to prove a specific statement of reason knowingly false or misleading incomplete, even when stated in conclusory terms." *Id.*

Predictions of future growth stand on a different footing, however, because they will almost always prove to be wrong in hindsight. If a company predicts twenty-five percent growth, that is simply the company's best guess as to how the future will play out. As a statistical matter, twenty percent and thirty percent growth are both nearly as likely as twenty-five. If growth proves less than predicted, buyers will sue; if growth proves greater, sellers will sue. Imposing liability would put companies in a whipsaw, with a lawsuit almost a certainty. Such liability would deter companies from discussing their prospects, and the securities markets would be deprived of the information those predictions offer. We believe that this is contrary to the goal of full disclosure underlying the securities laws, and we decline to endorse it.

## C.

■ Finally, plaintiffs challenge the statements in the March 30 press release that the contracting slowdown was "administrative" and "temporary" and that "results during the remainder of 1992 should be in line with analysts' current projections."[2] Plaintiffs contend that these statements were false when made and had no reasonable basis, given the slowdown in the award of DOE contracts.

The district court concluded that "[e]specially given the amorphous nature of these terms and the well-known vagaries of Government contracting, the Court is of the opinion that the plaintiffs have not alleged sufficient non-conclusory facts under Rule 9(b) to show that the statements were false...." We agree. Plaintiffs have alleged no facts showing that General Physics did not believe that these statements were accurate at the time. "Temporary" is an indeterminate term: it could mean weeks, it could mean months, it could mean years. It is not clear from the complaint that there was a misstatement at all, much less a material one. Government contracting is fre-

---

(iii) whether a company can be liable for third party opinions and statements—all of which are central to this appeal.

**2.** These statements were reiterated in General Physics' press release of April 23, 1992 announcing its first-quarter results.

quently a cyclical enterprise. Analysts and markets were well aware that the end of Cold War might affect General Physics' business involving weapons production; General Physics had no duty to advise investors of what was already commonly known. *See Hanon v. Dataprods. Corp.*, 976 F.2d 497, 505 (9th Cir.1992) (citing *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 515 (7th Cir.1989)).

General Physics' predictions about earnings for the latter three quarters of 1992 proved incorrect, but hindsight does not establish fraud. If it did, any drop in the price of shares would result in lawsuits from disappointed investors. The market has risks; the securities laws do not serve as investment insurance. Every prediction of success that fails to materialize cannot create on that account an action for securities fraud. Like the optimistic statements of the Annual Report, the statement that results "should be in line with analysts' current projections" hardly constitutes a guarantee that earnings would be forthcoming in particular amounts; this forecast, like the others, lacks the specificity necessary to make it material.

## III.

The district court did not abuse its discretion in denying plaintiffs a second chance to add scatter-shot allegations to their complaint. Finally, the district court did not err in dismissing plaintiffs' common law claims for the same defects that barred the federal claims. For the above reasons, the judgment of the district court is

*AFFIRMED.*