Dennis E. BENTLEY, David Cohen, Manuel and Jeri Davidoff, Anthony J. Esposito, Joseph J. George, Thomas Gunn, Joseph T. Harris, Ira Thomas, Deborah Herman, George M. Meeks, Phyllis Meier, and Joseph T. Rios, on behalf of themselves and all those similarly situated, Plaintiffs,

v.

LEGENT CORPORATION, John F. Burton, David C. Wetmore, and Franchon M. Smithson, Defendants.

Civ. A. No. 93–894–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 4, 1994.

Steven Jeffrey Toll, Cohen, Milstein, Hausfeld and Toll, Washington, D.C., for plaintiffs.

Sean Sherman, Hale & Dorr, Washington, D.C., for defendants.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter came before the Court for a trial by jury on February 1, 1994. This is a class action suit brought by purchasers of Legent Corporation's common stock against Legent and its officers. In Count I, Plaintiffs allege that the defendants misled the investment public in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, with a series of statements regarding the company's projected earnings. Counts II and III of the Complaint further charge defendants with common law fraud and negligent misrepresentation. At the close of the plaintiffs' case, the defendants made a Motion for Judgment as a Matter of Law under Fed.R.Civ.P. 50(a). The Court granted the defendants' motion for the reasons discussed below.

Rule 10b–5 makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading ... in connection

with the purchase of a sale of any security." 17 C.F.R. § 240.10b–5 (1987). To succeed in a claim arising under Rule 10b–5, the plaintiffs must prove six essential elements: (1) a misstatement or omission (2) of a material (3) fact (4) with scienter (5) upon which the plaintiff justifiably relied (6) that proximately caused the plaintiffs' damages. *Myers v. Finkle*, 950 F.2d 165, 167 (4th Cir.1991).

Plaintiffs based their case on a series of statements concerning Legent's growth and revenues. The first set of statements occurred during a January 27, 1993 press release and conference call by Legent. The gist of the statements made by Mr. Burton on that date was that Legent had just come out of a strong first quarter, and that the company was "firmly on its 1993 plan for revenue and earnings growth." At that time, Mr. Burton also said that he was confident that Legent would make the estimates of "Street expectations".

The next set of statements come from an April 13, 1993 conference call in which Mr. Burton announced Legent's second quarter earnings. At that time, Mr. Burton expressed that he was still comfortable with the projections for earnings, but said that the company was having trouble with the projections. During the April 27 conference call, Mr. Burton also discussed how the company was doing in regard to the size of its pipelines, the execution of its sales force, and the company's opinion on its visibility for its plan for the remainder of the year. Mr. Burton said that although the company experienced "slippage" in the second quarter, he was still confident with the projections. In a subsequent April 23 conference call, the company gave more detail on the second quarter results, but reiterated its confidence in future performance. Legent convened another call on April 27 in order to give analysts more information based on their further analysis. In that call, Legent gave a specific range for earnings: $0.45–$0.55 for the third quarter and $2.25–$2.50 for the fiscal year.

The last set of statements took place during Scott Smith's June 14 visit and June 16 report. In his report, Mr. Smith indicated that the company had "increased confidence its ability to achieve earnings expectations," and that April and May had been "on target." During the June 16 call, Mr. Smith also stated that, "the pipeline for June has been more rigorously reviewed than ever before, incentives are in place for closing business, and expense controls are tight."

■ The defendants are entitled to judgment as a matter of law with respect to the projections of future performance. There are two projections at issue in this case; both relate only to earnings per share, not revenue. The statement on January 27 is that Legent "had even greater confidence in what the average is of the Street expectations" (about $2.45 earnings per share for the year). The January 27 statement had a sound and analytical basis. Legent was coming off its best year ever and a solid first quarter. Such a sound historical basis precludes liability. Moreover, all internal projections at the time were for earnings per share performance of at least $2.45 per share for the full year.

The April 27 guidance, the analysis done by Mr. Smithson and Mr. Buchanan on April 26, showing 45¢ to 55¢ for the third quarter and $2.30–$2.50 for the year, also had a solid basis. In an effort to be conservative, Mr. Burton actually lowered the annual range when he gave guidance on April 27. Every full internal forecast done thereafter was within this range. As to the projection for full year earnings per share at the end of the first quarter, it was supported by the historical trends. Legent had a history of 15% to 35% annual growth, and was coming off a record year and a very strong first quarter.

Plaintiffs failed to present any evidence that undermined the accuracy of defendants' projections. The only evidence plaintiffs point to is the Corporate Forecast Reports. The uncontradicted evidence is that they were minimum forecasts, not best estimates. Every witness presented by the plaintiff, who was responsible for the Corporate Forecast Reports, testified that the Corporate Forecast Reports reflected only minimum commitments and/or excluded many large deals and other items that could impact earnings per share. Also, the status of the Corporate Forecast Reports as minimum commitment or worst case forecasts is confirmed by the

documentary evidence of numerous "most likely case" or "best estimate" forecasts during the class period, all of which were in line with the guidance given the market.

Finally, the evidence clearly establishes that the "hockey stick" effect made forecasting very difficult. Numerous witnesses at trial described the "hockey stick" effect and the difficulty it causes in predicting what results will be. The market was well aware that companies like Legent are subject to this effect.

It is clear that Legent did not phrase its guidance as guarantees. In fact, Legent specifically stated that its projections were not guarantees. The context in which Legent offered its guidance made clear that its guidance was not a guarantee. The company's statements as to projections of future earnings took on a cautionary tone. The analysts following Legent did not consider Legent's guidance to be in the nature of a guarantee.

■ Defendants are also entitled to judgment as a matter of law with respect to statements about Legent being "on plan" or "on target." These statements about growth of the company are projections of future performance, and are not actionable for the same reasons as the statements discussed above. Even interpreted as statements of past fact, they are not actionable. The following statements were made on January 27:

> We are right where we expected to be at the end of the first quarter and on an earnings basis, we are over where we had expected to be from an operating basis. The first quarter's performance, Burton said, show that Legent is firmly on its 1993 plan for revenue and earnings growth.

Plaintiffs claim these statements are false because Legent's first quarter revenue in North America was 17% below budget. However, it is uncontradicted that the references are not to Legent's budget. The statements referred to the overall business plan, and not the budget. Indeed, Legent (like most companies) did not publicly release its budget numbers, so a reference to the budget would be meaningless to the market.

The statement contained in Scott Smith's report states:

> Our visit with [Legent] this week indicated that the company has increased confidence in its ability to achieve earnings expectations of $0.45–$0.55 vs. $0.38 in the June [quarter] ... We emphasize, however, that the last 2 weeks of the [quarter] are still critical for sales.

This statement is not actionable. If it were a statement by Legent, it plainly bespeaks caution in light of the statement in the report itself about the last two weeks being critical for sales. As a statement by an analyst, it is inappropriate to hold Legent liable for it. Mr. Smithson testified that those were Mr. Smith's words, not his. Even if Mr. Smithson had said those words, and even if there had been no cautionary language, this statement would not be actionable because it was true. The evidence demonstrates that the company had reasonable expectations until the very end of the quarter.

■ Defendants are entitled to judgment as a matter of law with respect to statements concerning Legent's second quarter earnings per share results. These statements fall into two groups: statements which refer to 52¢ earnings per share for the second quarter; and statements which refer to tight expense controls. Both groups of statements are not actionable because the evidence presented is that the statements are true. The company did have a reasonable basis for the estimate, and they did institute expense controls. In any event, general statements concerning a company's "tight expense controls" are precisely the kind of "puffing" statements that the Court held were not actionable in *Raab v. General Physics Corporation*, 4 F.3d 286, 290 (4th Cir.1993).

■ Defendants are entitled to judgment as a matter of law with respect to Legent's statements concerning its pipeline and large sales that had not closed. The evidence has shown that those statements were true. To the extent plaintiffs claim that these statements implied a prediction that the deals would close in the future, none of the statements are close to the "guarantees" required to be actionable under *Raab*.

Defendants are entitled to judgment as a matter of law with respect to Legent's statements about Goal. The statements about the successful integration of Goal were true statements. These statements referred to expense savings from the integration, which had been instituted by the company.

■ In addition, plaintiffs have failed to show that any of the individual defendants made any fraudulent statements. The evidence has shown that Mr. Wetmore did not make a single statement alleged by the plaintiffs to be fraudulent. The evidence has failed to demonstrate a link between him and any statement made by another. Further, the evidence has shown that Mr. Smithson did not make any of the statements alleged by the plaintiffs to be fraudulent. At most, he is a possible source for the statements made by analyst, Scott Smith. In *Raab*, 4 F.3d at 288–89, the Fourth Circuit specifically cautions against holding parties responsible for statements made by analysts. Also, there is no evidence that Mr. Smithson ever acted other than in good faith. Likewise, the plaintiffs have adduced no evidence demonstrating that Mr. Burton ever acted other than in good faith.

■ Lastly, defendants are entitled to judgment as a matter of law because plaintiffs have failed to produce any competent evidence of damages. Defendants moved to strike the testimony of the plaintiffs' expert, Ms. Preston. In this case, Ms. Preston based her damage estimates on the salesmen's minimal forecasts. However, the evidence in this case is uncontradicted that the minimal forecast reports were not in fact the company's estimates. Ms. Preston testified that there are no damages in this case if the company's numbers are used. It is well established that expert witnesses must base their opinions on the facts of the case. *See Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 54 (4th Cir.1993) (holding that court may refuse to allow generally qualified expert to testify if her factual assumptions are not supported by evidence); *The Domira*, 49 F.2d 324, 327 (D.N.Y.1931) (striking testimony of expert witness because he based his conclusions upon facts not in evidence and made inferences that "cannot be properly

drawn from the facts proven"), *aff'd*, 56 F.2d 585 (2d Cir.1932). Because Ms. Preston based her opinion on a false assumption, the Court granted defendants' motion to strike her testimony.

In *Raab*, 4 F.3d at 290, the Fourth Circuit held that to be material under the securities laws, a company's projection of future performance must be so definite as to be in that nature of a guarantee. The Court in *Raab* dismissed the case with respect to a statement very similar to the ones plaintiffs complain of here, holding: "[T]his forecast, like the others, lacks the material specificity necessary to make it material." 4 F.3d at 291. The Court further reasoned that, as a matter of policy, "[e]very prediction of success that fails to materialize cannot create on that account an action for securities fraud." *Raab*, 4 F.3d at 291. *Raab* stands for the principle that mere expressions of optimism are not actionable. *Id.* at 290. Nor are statements that "bespeak caution" actionable. *Luce v. Edelstein*, 802 F.2d 49 (2d Cir.1986); *Polin v. Conductron Corp.*, 552 F.2d 797 (8th Cir.), *cert. denied*, 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977).

Given the situation, it appears that Legent acted as timely as possible with respect to its projections. Had the company not revised its projections, it could have been subject to suit for failing to apprise the market of this information, keeping the value too high. If the company had acted too precipitously, it could have been subject to suit for unduly affecting the market with unrealistically low numbers. The Court in *Raab* addressed this dilemma in dealing with projections:

> [i]f growth proves less than predicted, buyers will sue; if growth proves greater, sellers will sue. Imposing liability would put companies in a whipsaw, with a lawsuit almost a certainty. Such liability would deter companies from discussing their prospects, and the securities markets would be deprived of the information that those predictions offer. We believe that this is contrary to the goal of full disclosure underlying the securities laws, and we decline to endorse it.

4 F.3d at 290. In this case, Legent looked at the estimates as quickly as it could have

under the circumstances, and its conduct was perfectly reasonable.

 Count II of the Complaint charges the defendants with common law fraud. To prove actual fraud under Virginia law, a plaintiff must show a false representation by a defendant of a material fact made intentionally and knowingly with intent to mislead, reliance by misled party, and resulting injury to party misled. *Diaz Vicente v. Obenauer*, 736 F.Supp. 679, 690 (E.D.Va.1990); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 315 S.E.2d 193, 195 (1984). In this case, there is no evidence of a misrepresentation of a material fact. All of the statements dealt with company estimates of earnings per share and company performance. Estimates of future performance are not statements of fact. *Raab*, 4 F.3d at 290. In this case, plaintiffs have failed to produce any evidence that the defendants intended to mislead the plaintiffs. The evidence shown in this case is that the defendants acted in good faith when making statements to the shareholders. The elements of fraud are not met in this case because there is no evidence that defendants intentionally made misrepresentations of material facts. Therefore, the fraud claim must fail.

 Count III, defendants' claim of negligent misrepresentation, must also fail. Virginia does not recognize any tort of negligent misrepresentation. *Haigh v. Matsushita Elec. Corp.*, 676 F.Supp. 1332, 1349–50 (E.D.Va.1987). Therefore, Count III of the Complaint fails to state a claim upon which relief may be granted.

 The Court may grant a Rule 50 motion if "a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Fed.R.Civ.P. 50(a). The standard on a judgment as a matter of law is similar to the standard on a summary judgment motion where the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

In summary, plaintiffs have failed to present sufficient evidence to go to the jury on any of the statements they allege to be fraudulent. The evidence has plainly shown that the defendants consistently acted with a reasonable basis and in good faith. Projections of future performance made by the defendants are not the "specific guarantees" required by *Raab* to be material under the securities laws.

An appropriate Order shall issue.

### ORDER

Based on the reasons stated in the accompanying Memorandum Opinion, and for reasons stated from the bench, it is hereby

ORDERED that defendants' Motion for Judgment as a Matter of Law is GRANTED, and this action is DISMISSED.