Lynn **SINAY**, et al., Plaintiffs,

v.

The **LAMSON & SESSIONS CO.**, et al., Defendants.

No. 1:89CV1448.

United States District Court, N.D. Ohio, E.D.

Nov. 1, 1990.

Alan L. Melamed, Dimm, Hochman, King & Melamed, Mayfield Heights, Ohio, for plaintiffs.

John W. Edwards II, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendants.

### MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Lynn Sinay and David Rosenberg, bring this suit against The Lamson & Sessions Company ("Lamson"), Russel B. Every, Gene F. Budd, and John B. Schulze ("the defendants") pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b). Sinay and Rosenberg also bring a state law claim based on negligent misrepresentation. The defendants have moved for dismissal of the complaint. For the reasons stated, the motion is granted.

### I.

The facts alleged are as follows. Sinay purchased 1,200 shares of Lamson common stock on March 6, 1989, at $15.875 per share and Rosenberg purchased 5,000 shares of Lamson common stock on November 1, 1988, at $17.395 per share. Lamson manufactures industrial/construction products and transportation equipment products. Lamson has issued more than 10 million shares of common stock which are listed and traded on the New York Stock

Exchange (NYSE) and also on the Midwest Stock Exchange.

Defendant Russel B. Every is chairman of the board of Lamson and has been a director since 1979. Defendant John Schulze is the president and chief executive officer of Lamson and has been a director since 1984. Defendant Gene F. Budd is senior vice president of finance and administration. Plaintiffs claim that because of each of the individual defendants' positions within the company, each was a controlling person within the meaning of the Act.

Plaintiffs allege that from October 24, 1988, through June 22, 1989, defendants recklessly began a course of conduct which (1) deceived the investing public regarding Lamson's business, demand for products, markets, financial condition and future business prospects; (2) artificially inflated the market price of Lamson's stock; (3) caused plaintiffs to purchase stock at artificially inflated prices; and (4) permitted Budd and Every to sell a portion of their common stock at these inflated prices.

Plaintiffs further allege that the defendants achieved the above results through publicly disseminating statements which falsely created a picture of growing demand for Lamson's industrial/construction products, and of growth in earnings, and by failing to disclose that the market for construction products was declining and that Lamson might experience a labor strike.

The following statements form the basis for the complaint. On October 24, 1988, Lamson, in its financial report for the quarter ending September 30, 1988, stated as follows:

> Higher sales and net earnings for the third quarter and nine-month period ended September 30, 1988, compared with a year ago period.
>
> Net sales for the third quarter of 1988 increased by 11.9%, reaching $101 Million compared with $89 Million in the same quarter of 1987.
>
> The third quarter of 1988, net earnings were more than doubled those of the year-ago period. Net earnings totaled $7.9 Million, or .72 [cents] of primary earnings per share, compared with $3,700,000, or .40[cents] per share.
>
> For the nine-month period ended September 30, 1988, net sales totaled $298.1 Million compared with $251.7 Million, for an increase of 18.5%.
>
> Net earnings were triple those for the same period one year ago. Net earnings were $21.3 Million for the 1988 period, or $2.21 per share, compared with $7 Million, or .86[cents] per share, in the similar period last year.

Complaint at ¶ 26.

At the time the report was issued, Every stated:

> the company's performance during the third quarter in nine months of 1988, compared with the same periods of last year was gratifying. These improved results in both and earnings were primarily attributable to the Industrial Construction Products segment. [I]n looking at the balance of the year, we are experiencing some slow down in the commercial and residential construction markets and believe these normal seasonal declines will continue into the first quarter of 1989.

Complaint at ¶ 27.

On November 21, 1988, S & P increased Lamson's rating on subordinated debt and preference stocks. S & P indicated that the upgrade reflected Lamson's dramatically improved earnings and diminished financial risk. Also, S & P stated that Lamson's strong performance and good cost position aided Lamson in tripling its income in the first nine months of 1988.

On December 23, 1988, *The New York Times*, reported that Budd stated that Lamson "has been having a tremendous year."

On February 21, 1989, Lamson reported that it achieved record sales and earnings in the year ended December 31, 1988. Schulze stated:

> We are very pleased with these results which clearly demonstrate the strength of the company since our acquisition in November 1986 of Carlon and its contribution for two full years.

We made excellent progress during 1988 and expanding [sic] further into the electrical, industrial, utility and consumer markets with a broad and growing line of thermoplastic products. Our strategic marketing plan calls for continued development of our position in these domestic markets and our world wide transportation markets.

Sinay and Rosenberg allege that these statements "were materially misleading in that they projected, and painted a picture of, continued increasing demand for [Lamson's] industrial/construction products, along with continued growth in net sales and net income that would surpass the growth of the past year." Complaint at ¶ 32.

The complaint also discusses statements made after March 6, 1989. However, for reasons to be discussed, these are not relevant to the issues before this Court.

## II.

In reviewing the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint liberally in plaintiff's favor and accept as true all factual allegations and permissible inferences therein. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The complaint is only to be dismissed if the plaintiff could prove no set of facts in support of his claim which entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986).

## III.

Section 10 of the Act granted the SEC the authority to establish regulations "to protect investors against manipulation of stock prices." *Basic v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 982, 99 L.Ed.2d 194 (1988). Pursuant to this authority, the SEC promulgated Rule 10b(5) which provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national security exchange, . . .

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. . . . In connection with the purchase or sale of any security.

The Sixth Circuit has noted that the elements necessary to state a claim under Rule 10b–5 will vary somewhat but that generally they are as follows: "1) the use of jurisdictional means 2) to implement a deceptive or manipulative practice (with requisite scienter) 3) in connection with 4) the purchase or sale 5) of a security 6) causing 7) damages." *M & B Contracting Corporation v. Dale,* 795 F.2d 531, 536 (6th Cir.1986).

Plaintiffs do not allege that a specific statement caused them to purchase the stock. In other words, they do not allege reliance on particular statements. Rather, their complaint is based on the "fraud on the market" theory. This theory is

based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements. . . . The causal connection between the defendants' fraud and the plaintiff's purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Basic,* 108 S.Ct. at 988–89 (citing *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3rd Cir. 1986). A presumption arises that plaintiff purchased at an inflated price. 108 S.Ct. at 992. However, if the "market makers" were actually privy to the truth, then this

presumption is rebutted. *Id.* Plaintiffs allege that because of defendants' statements, the price of Lamson stock was artificially inflated.

The motion to dismiss presents issues concerning both standing and the misleading nature of the statements.

### A. Standing

■ It is clear that plaintiffs, as actual purchasers of the stock, are entitled to maintain this suit. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). However, each plaintiff is entitled to base his suit only on statements which were made prior to his purchase of the stock. Clearly, a plaintiff cannot have relied, in deciding to purchase stock, on statements made after that purchase and cannot state a claim based on a post-purchase statement. *See, Marsh v. Armada Corporation,* 533 F.2d 978, 982 n. 3 (6th Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977) ("standing is not accorded to a plaintiff if his purchase or sale occurs before the alleged fraudulent conduct"); *Huang v. Sentinel Government Securities,* 709 F.Supp. 1290, 1294 (S.D.N.Y.1989) (citations omitted). This is true even where the plaintiff relies on fraud on the market, because what is at issue is whether at the time of purchase, the stock's price was inflated by defendants' misstatements and not whether it was inflated at a later time. Plaintiffs also cannot challenge post-purchase statements by arguing that, but for the fraud, they would have sold their shares before the market value declined. Such a claim is precluded by the Supreme Court's holding in *Blue Chip Stamps,* 421 U.S. at 737–38, 95 S.Ct. at 1926.

Thus, Rosenberg is limited to a claim based on alleged misstatements made before November 1, 1988 and Sinay must show fraud before his purchase of stock on March 6, 1989.

### B. Misleading nature of the statements

Each plaintiff relies on two separate theories to establish that the statements were misleading. First, each argues that all the statements taken together create a gloss which is misleading. Second, each argues that the statements are rendered misleading because material facts were omitted. The Court will first examine Rosenberg's claim and then Sinay's.

### Rosenberg

■ In determining whether the statements taken together create a "gloss" or inference which is misleading, this Court must look to both the information disclosed and the context in which the disclosure appears. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 201 (5th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988) (holding it was error for trial court to refuse to consider context in evaluating securities fraud claim). Information is imparted both through the use of the individual words and also through context. *Id.* at 200 n. 9. In *Isquith,* the company had, in its disclosure documents emphasized data which showed an increase in peak demand (electrical) but glossed over the fact that overall demand for electricity had declined. *Id.* at 200.

Rosenberg relies on Lamson's third quarter report issued on October 24 and Every's statement made at that time indicating he was gratified by the company's performance, but also noting that currently the construction market was in a normal, seasonal slump, which he expected to end in 1989. Rosenberg does not allege that these statements were false. Rather, he alleges that these statements taken together created the impression of continued growth and prosperity. This Court cannot agree.

These statements are true. Lamson was experiencing a record year and was required to report that truthfully. Its executives naturally were gratified. These statements cannot be read as creating an inference that the company was stating that it expected to continue record growth. Rosenberg has not pointed to any emphasis or minimization in these statements which makes them misleading. Rosenberg merely characterizes them as misleading with-

out providing any allegations in support of that conclusion.

If a claim could be stated based on the above two statements, then any situation where a company truthfully reports a tremendous year, and subsequently suffers a huge sales slump, would support a claim under 10b–5. This Court must not lose sight of the purpose behind 10b–5, which is to prevent actual fraud. *Howing Company v. Nationwide Corporation*, 826 F.2d 1470, 1481 (6th Cir.1987), *cert. denied*, 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988). It is not to prevent the disclosure of true information and Rosenberg has failed to allege sufficient facts to show that these statements were fraudulent.

■ Next, Rosenberg argues that these two statements are misleading because of an omission. In particular, Every referred to the construction decline in October 1988 as a "normal seasonal" decline and failed to disclose that this was a long term decline. For an omission to be material " 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.' " *Basic*, 108 S.Ct. at 983, citing *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). Clearly, information regarding the long term prospect of the company would be material.

■ Where a plaintiff is proceeding on a fraud on the market theory, "the defendant's failure to disclose material information may be excused where that information has been made credibly available to the market by other sources." *In re Apple Computer Securities Litigation*, 886 F.2d 1109, 1115 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990).

■ Here, the information imparted or not imparted involves predictions.

"Whether liability is imposed depends on whether the predictive statement was 'false' when it was made. The answer to this inquiry, however, does not turn on whether the prediction in fact proved to be wrong; instead, falsity is determined by examining the nature of the prediction-with the emphasis on whether the prediction suggested reliability, bespoke caution, was made in good faith, or had a sound factual or historical basis." *Isquith v. Middle South Utilities, Inc.*, 847 F.2d at 204 (citations omitted). Rosenberg has made no factual allegation showing that Lamson had reason to believe, in October 1988, that its prediction of a normal seasonal slump was either wrong or inaccurate.

This case is similar to *Schwartz v. Novo Industri, A/S*, 658 F.Supp. 795, 798–99 (S.D.N.Y.1987), where the court dismissed a 10b–5 claim which was based on a statement in the *Wall Street Journal*, attributed to the defendant's president, where he predicted 20% to 25% growth. The court found that without more, the statement is nothing more "than a judgment subsequently found to have been overly optimistic. Plaintiff fails to offer a single objective fact to suggest that the prediction was other than an honestly held view based on Novo's considered judgment given the information before it." Here, plaintiff has failed to offer any factual allegation to show that the statement was not made in good faith. In hindsight, it is clear that the statement was not true but this Court must examine the statement at the time it was made.[1]

It is not sufficient to merely allege that it was false when made but plaintiff must make some allegations from which a fact finder could infer that defendant knew, *or should have known*, that the statement was misleading. Therefore, this Court dismisses Rosenberg's claim under Rule 10b–5.

---

**1.** If it were common knowledge that the construction industry was in a long term slump, then the Court can presume that that information was available to the "market makers" and

was reflected in the market price. Neither plaintiff has offered any allegation to overcome this presumption.

**834**

*Sinay*

 Sinay, in addition to the two statements discussed above, relies on S & P's rating increase[2], a statement by Budd in December 1988 that Lamson "has been having a tremendous year." He also relies on a statement made by Schulze in February 1989 reporting record sales and earnings for 1988, indicating pleasure with the results, and stating in general terms that the firm expected to continue developing its markets.

This Court finds that the statements taken in context, cannot as a matter of law, be read as creating a misleading gloss. The statements are true in context. Sinay's complaint and brief repeat the statements and then, in a conclusory fashion, allege that they were misleading. Sinay fails to articulate any facts about the context which render the statements misleading. The failure to make such allegations, requires dismissal of the claim.

Sinay's claim regarding an alleged omission which made the statements misleading is also identical to Rosenberg's. No allegations have been made to support an inference that when the statements were made Lamson knew them to be false and knew that its market was in serious, long term trouble.

Accordingly, the Court cannot find the allegations sufficient to show that the statements were misleading because of an omission.

### IV.

Both Rosenberg and Sinay bring a state claim based on negligent misrepresentation. Jurisdiction in this case is based upon the existence of a federal question. This Court has jurisdiction over the above state law claims only as they are pendent to the federal causes of action.

Federal courts have the power to exercise pendent jurisdiction where the state and federal claims derive from a common nucleus of facts such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). But "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139; 3A J. Lucas, *Moore's Federal Practice* 18.07[1.–3] at 18–36–18–43 (2d ed. 1987).

Accordingly, this Court, in its discretion, orders the pendent state claim dismissed without prejudice for lack of a substantial federal claim.

### V.

In conclusion, both Rosenberg's and Sinay's claims based on Rule 10b–5 are dismissed for failure to state a claim, and their state law claim is dismissed for lack of pendent jurisdiction.

IT IS SO ORDERED.

---

**2.** Sinay has offered no allegations which would permit this Court to attribute S & P's report to the defendants. There are no allegations that defendants influenced S & P or caused them to issue an unreliable report.