**Seymour GREENBERG, Plaintiff,**

v.

**COMPUWARE CORP., Peter Karmanos, Jr., Thomas Thewes, Joseph A. Nathan, John N. Shevillo, Bodo C.M. Douque, W. James Prowse, Michael J. Lobsinger, Steven A. Denning, William O. Grabe, and General Atlantic Partners, Defendants.**

No. 94–CV–74336.

United States District Court,
E.D. Michigan,
Southern Division.

June 6, 1995.

Fredric N. Goldberg, Mika, Meyers, Beckett & Jones, Grand Rapids, MI, Sanford P. Dumain, Aaron W. Tandy, Milberg Weiss Bershad Hynes & Lerach, New York City, Richard Schiffrin, Schiffrin & Craig, Ltd., Bala Cynwyd, PA, for plaintiff.

Stephen Wasinger, Raymond W. Henney, Steven M. Ribiat, Honigman Miller Schwartz and Cohen, Detroit, MI, for defendants Compuware, Karmanos, Thewes, Nathan, Shevillo, Douque, Prowse.

Martin C. Weisman, Weisman, Trogan, Young & Schloss, P.C., Birmingham, MI, Steven B. Rosenfeld, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Denning, Grabe, General Atlantic.

Eric J. McCann, Eric J. McCann, P.C., Birmingham, MI, for defendant Lobsinger.

### OPINION AND ORDER

FEIKENS, District Judge.

#### I. *Introduction*

Plaintiff, who seeks to represent all those who purchased the common stock of Defendant, Compuware Corporation, during the period of September 22, 1994 through October 24, 1994 ("the Class Period"), comes before this court alleging violations of § 10(b)[1] and § 20(a)[2] of the Securities Exchange Act

---

1. § 10(b) reads:

   It shall be unlawful for any person, directly or indirectly ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate ...
   Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b) (1981).

2. Plaintiff alleges that the various Defendant officers and directors of Compuware are liable to the same extent as Compuware under § 20(a)

of 1934 ("the SEA") and common law fraud. The impetus for the suit is the 21 percent drop in price that Compuware's stock allegedly experienced on October 25, 1994[3], one day after the company announced its operating results for the second quarter of fiscal 1995[4]. Plaintiff characterizes this drop as the market's surprised reaction to previously undisclosed information about Compuware's operations which came to light when the company's earnings per share figure for the second quarter of fiscal 1995 was announced at one to two cents short of what was predicted by stock market analysts.

Plaintiff alleges that Defendant Compuware Corporation, the named Defendant officers and directors of the company ("the Individual Defendants"), and a general partnership formed by two of the directors (Defendant General Atlantic), perpetrated a "fraud on the market" via two devices: 1) issuing materially false and misleading statements in a Prospectus which was filed with the Securities Exchange Commission ("SEC") on the first day of the Class Period, pursuant to which a secondary offering ("the offering") of 9,360,000 shares of common stock for $43 per share was·held and through which the Individual Defendants sold substantial amounts of stock[5]; and 2) feeding stock analysts with overly optimistic information about the company's prospects, which led them to issue reports that projected an inflated earnings per share figure.

Plaintiff faults Defendants for failing to disclose that the company was experiencing expenses that were higher than "expected" and that growth in revenues was attributable to high-risk international sales. Allegedly, statements in the Prospectus relating to glowing past performance results and the tendency for the company's expenses to be "generally fixed", and those stressing North American operations, were rendered false and misleading by these omissions, inasmuch as they painted too promising of a picture of Compuware. Furthermore, it is alleged that Defendants had a duty to correct the excessively positive statements about Compuware made in the analysts' reports. Complaint, ¶ 32.

Defendants move for dismissal pursuant to Rule 12(b)(6) and/or Rule 9(b) of the Federal Rules of Civil Procedure. They submit that the complaint consists almost entirely of statements of legal conclusions rather than specific factual averments. Such a complaint, Defendants argue, is insufficient to plead fraud. Plaintiff counters that the complaint more than adequately sets forth a cause of action for securities fraud, arguing that it is sufficient under Sixth Circuit standards. Plaintiff construes the Sixth Circuit's reading of Rule 9(b) of the Federal Rules of Civil Procedure as requiring little more than the "short and plain statement of the claim" mandated by FED.R.CIV.P. 8. Although Plaintiff asserts that the complaint adequately notifies the Defendants of the nature of the claims pressed against them, leave to amend is requested in the event that the court disagrees.

## II. *Analysis*

▆▆▆ To make out a violation of Rule

---

as "controlling persons" of the corporation. Complaint, ¶ 16.

§ 20(a) provides:
Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
Securities Exchange Act of 1934, § 20(a), 15 U.S.C. § 78t(a) (1981).

3. The complaint alleges that the stock price fell 9¾ points to 37¾ on October 25, 1994, a day on which it was being traded at an exceptionally heavy volume of 7,690,800 shares (alleged to be 15 times the average daily volume). Complaint, ¶ 49.

4. The complaint alleges that second quarter revenues were reported at $124.1 million; net income was reported at $17.5 million; earnings per share was reported at a "dissatisfying" $0.37. Complaint, ¶ 48.

5. Defendants Denning and Grabe are alleged to have sold their stock through Defendant General Atlantic Partners, a New York partnership of which they are general partners. Complaint, ¶ 15.

10b–5 [6], promulgated by the Securities and Exchange Commission to implement § 10(b) of the SEA, Plaintiff needs to establish the following elements: (a) a misrepresentation or omission by the defendant; (b) that the misrepresentation or omission related to a material fact; (c) a purchase or sale of a security in connection with the fraudulent device; (d) scienter on the part of the defendant; (e) justifiable reliance by the plaintiff on the defendant's statements, or fraud on the market; and (f) damages resulting from the misrepresentation or omission. *See, e.g., Cione v. Gorr,* 843 F.Supp. 1199, 1201–02 (N.D.Ohio 1994) (citing *Platsis v. E.F. Hutton & Co.,* 946 F.2d 38, 40 (6th Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992)). Further, to invoke the presumption of reliance by using fraud on the market theory [7], as Plaintiff has attempted to do in his complaint, the Plaintiff must also allege that the misrepresentations were public, that the shares were traded on an efficient market, and that the Plaintiff traded the shares between the time the misrepresentations were made and the time the truth was revealed. *Basic, Inc. v. Levinson,* 485 U.S. 224, 248 n. 27, 108 S.Ct. 978, 992 n. 27, 99 L.Ed.2d 194 (1988). Because Plaintiff's complaint does touch upon each of the required elements, he argues that he has sufficiently pleaded claims of securities fraud.

If Plaintiff means to assert that recital of the elements of a cause of action in laundry-list fashion satisfies his burden of pleading, he is plainly incorrect. Such a simple rule would reduce Rule 9(b) of the Federal Rules of Civil Procedure, which commands that "the circumstances constituting fraud shall be stated with particularity [in a pleading]", to a nullity. Similarly, the oft-cited principle that "all well-pleaded facts are to be accepted as true", *see, e.g., Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *Britt v. Cyril Bath Co.,* 417 F.2d 433, 434 (6th Cir. 1969), used to make "failure to state a claim" determinations under FED.R.CIV.P. 12(b)(6), would lose meaning. Particularity and skill in pleading vary along a continuum. Whether the averments in Plaintiff's complaint adequately set out a cause of action for fraud is a matter of degree requiring judgment rather than a "check-list" mode of analysis for its resolution.

I am called to measure the adequacy of Plaintiff's complaint using the standards of Rules 12(b)(6) and 9(b). Should it be deemed insufficient under 12(b)(6), logic dictates that it must also fail under 9(b), for the test of the former is more liberal than that of the latter. Thus, I undertake the 12(b)(6) analysis first.

### A. Defendants' 12(b)(6) Motions

■ Under Rule 12(b)(6), a complaint is examined to determine whether the Plaintiff has stated a cognizable claim. Although the pleader is given the benefit of the doubt as to the inferences which can be derived from the facts stated in his or her claim [8], this deference does not extend to "facts" which are not

---

6. Rule 10b–5 (17 C.F.R. § 240.10b–5) provides as follows: Employment of manipulative and deceptive devices.

   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

   (a) To employ any device, scheme, or artifice to defraud,

   (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

   (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

7. This theory maintains that investors may be damaged when the market price of stock is either artificially inflated or deflated by false and misleading statements (or statements that are so incomplete as to be misleading) which are disseminated to the public.

8. The accepted rule is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

"well-pleaded." *See Morgan*, 829 F.2d at 12 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Inasmuch as a court "need not accept as true legal conclusions or unwarranted factual inferences", *Morgan*, 829 F.2d at 12, the sufficiency of a complaint may be tested after all unsupported, conclusory allegations are excised. If what remains does not include direct or inferential allegations of fact respecting all of the material elements of a cause of action, then dismissal pursuant to Rule 12(b)(6) is warranted. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir.1988); *see also Hopper v. Covington*, 118 U.S. 148, 6 S.Ct. 1025, 30 L.Ed. 190 (1886) (although decided prior to the establishment of notice pleading, the Court's reasoning that a conclusory allegation was "fatally defective for not stating the facts necessary to enable the court to judge for itself whether that conclusion of law has any foundation in fact," still pertains). Any other course would render 12(b)(6) motions meaningless, for a court could never dismiss because it would never be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations", *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (speaking to the standard for granting a 12(b)(6) motion to dismiss), for the sole reason that the ambiguity in the allegations would always preclude ruling out facts from the set of possibly provable consistent facts. Such emasculation of 12(b)(6) motions is not to be countenanced because it has the undesirable effect of encouraging unwarranted "fishing expeditions." [9]

Examining the complaint for sufficient factual allegations to support each of the required elements of a 10b–5 claim reveals that Plaintiff has failed to adequately state a cause of action against Defendants.

Since "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b–5", *Basic*, 485 U.S. at 239, 108 S.Ct. at 987, Plaintiff had the burden of pleading that Compuware had affirmatively issued a false or misleading statement that would impose a duty to disclose corrective information. *See Starkman v. Marathon Oil Co.*, 772 F.2d 231, 238 (6th Cir.1985) (discusses 10b–5 disclosure duties in the context of a tender offer), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986). Plaintiff attempted to meet this burden by alluding to various statements, *see* complaint, ¶¶ 34–47, in the Prospectus and in analysts' reports which Plaintiff alleges Compuware "endorsed, ... adopted ... as its own and placed its imprimatur on." Complaint ¶ 32. These statements should be read with an eye toward what is allegedly misleading about them.

Due to Plaintiff's attorneys' sloppy drafting of the complaint, it is difficult to pinpoint precisely what is deemed misleading about any given statement which appears in paragraphs 34–47 of the pleading. Rather than explaining what is allegedly fraudulent about each allegation so that the Defendants, and indeed the court, may be put on adequate notice as to how the Plaintiff believes he has been wronged, Plaintiff simply spews out a

9. The instant litigation is exemplary; it has every indication of being a "strike suit" instigated by attorneys in the hopes of turning up a viable claim. The suit was started a mere 48 hours after the drop in stock price, which hardly seems to be an adequate amount of time for conducting the reasonable inquiry mandated by Fed.R.Civ.P. 11. Furthermore, Defendants' point at oral argument that Plaintiff never attempted to contact the securities analysts who issued the reports which are cited in Plaintiff's complaint is well taken. Plaintiff opines that it would have been fruitless to make such an attempt because the analysts would have been "loath to bite the hand that feeds them." Given the ease with which the attempt could have been made and the Plaintiff's contention that the analysts were "dupes" of Compuware (which would lead one to think that they would have been eager to disclaim responsibility for the erroneous projections, inasmuch as they could be sued by investors), it appears doubtful that "an inquiry reasonable under the circumstances" was made by Plaintiff. Should the analysts have taken issue with Plaintiff's contentions of fraud, then the next logical step would have been to join them as Defendants in this action. Although I do not draw any reasonable inferences against the Plaintiff for purposes of deciding this 12(b)(6) motion, I note here that the above considerations tempt me to impose sanctions under Rule 11. Because the Defendants have not actively pursued this and because I hesitate to impose such punishment absent more of an affirmative showing of bad faith in pursuing frivolous litigation, I refrain from taking such action.

slew of statements which he attributes to Defendants, and in conclusory fashion, labels them "materially false and misleading statements" made by Defendants with benefit "of inside information as to the true state of those facts." Complaint ¶ 47. It is only upon reaching Paragraphs 50 and 54 of this 67–paragraph complaint that the reader is given any inkling as to what is allegedly misleading about the statements [10], although no explanation of how each statement deceives, or alternatively, contributes to creating a false impression when taken in conjunction with the other statements, is forthcoming. This might be less bothersome if the statements' deceptive nature was apparent; however, the statements in the Prospectus, at least, are on their face innocuous.

## 1. Is the Prospectus Misleading?

Assuming for the moment that Defendants were in fact in possession of material, adverse information relating to Compuware's operations, I am unable to discern how the statements in the Prospectus are in any way misleading or false because of the omission of this information.

■ Plaintiff finds fault with the fact that Defendant highlighted the past successes of the company in the Prospectus. *See* complaint, ¶¶ 34–35. Yet none of these statements of past fact are alleged to be factually inaccurate. Although the theory upon which he is proceeding is far from clear, Plaintiff appears to be suggesting that the Prospectus' recitation of Compuware's accomplish-

ments in the past would mislead investors to expect a performance that is at least equally rosy in the second quarter of 1995. I need not decide if this is a "material" misrepresentation, for I find that it is no misrepresentation at all. The inference Plaintiff asks this court to make is too farfetched. *See Sinay v. Lamson & Sessions Co.*, 752 F.Supp. 828, 832 (N.D.Ohio 1990), *aff'd*, 948 F.2d 1037 (6th Cir.1991) To give it credence would be akin to imposing liability for truthfully saying the "sky was blue yesterday" when the sky turns out to be gray the next day. The statements of past operating results are by their terms confined to discrete periods of time which have since elapsed, and hence are not in any manner deceitful.

■ The same rationale may apply to Plaintiff's allegation that Defendants misled investors by stressing the importance of North American operations at a time when they knew that growth in that sector was "essentially flat." Plaintiff points to only one specific statement of past fact relating to North American operations but he does not say it is factually inaccurate [11]. Again, I refuse to take this statement of past fact as implying that North American growth would continue into the future.

If the allegation is taken to mean that North American operations were given more emphasis than was warranted, I find that I cannot agree that a claim for securities fraud has been made out on that basis in this case [12]. While at least one court has found

10. The Prospectus and analysts' statements (presumably what Plaintiff refers to as "[t]he positive statements made in connection with Compuware's publicly reported financial information during the Class Period" in Paragraph 54) are alleged to be misleading for omitting the following pieces of information: (a) Compuware was experiencing "higher than expected" expenses which would adversely affect the Company's earnings; (b) the company's performance was "highly vulnerable" to such expenditures; (c) earnings and revenue from North American operations would be "essentially flat" with all earnings and revenue growth for the second quarter of 1995 resulting from high-risk international operations; (d) that Compuware's business was not performing as well as Defendants led analysts to believe; (e) adverse "trends" at the Company were known by Defendants; (f) Defendant's

"optimistic and positive statements" to analysts lacked a reasonable basis.

The conclusory nature of Plaintiff's complaint is amply demonstrated by the foregoing. I am at a loss to discern the meaning of terms such as "higher than expected", "highly vulnerable", and "essentially flat". Nor do I know specifically what the Plaintiff deems to be a "trend", and Plaintiff has not even attempted to identify any specific optimistic and positive statements that were made to the analysts.

11. The complaint quotes the Prospectus as stating "The Company experienced growth in all revenue categories during the three months ended June 30, 1994." Complaint ¶ 34.

12. The complaint at paragraph 38 alleges generally that: "[t]he Prospectus also stressed the importance and size of Compuware's North Ameri-

that true statements of past fact can become misleading by the manner in which they are placed in relation to other statements, *see Isquith v. Middle S. Util., Inc.,* 847 F.2d 186, 200–01 (5th Cir.1988) (finding that emphasizing data which showed an increase in peak demand over previous years while glossing over the fact that the overall demand had declined was potentially misleading), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988), I believe it is distinguishable. A statement about peak demand levels necessarily has bearing on overall demand levels, for the former is an important component of the latter, and the natural inference is that the sum will increase in direct proportion with such a significant part. However, as between the size and importance of North American operations and the year-to-year growth experienced in that sector, the relationship is different; indeed, it is somewhat reversed. The former is not a component of the latter, although the year-to-year growth may bear on the overall size of the North American market[13]. Thus, stressing the overall size of North American operations does not create a natural inference about growth, for while the sum is generally assumed to increase with its parts, any one part cannot be assumed to increase with the sum. Moreover, as the District Court which decided *Sinay v. Lamson & Sessions Co.,* 752 F.Supp. at 832, observed, Plaintiff "has not pointed to any emphasis or minimization in these statements which makes them misleading", other than alleging that North American operations were "stressed" in the Prospectus. This is conclusory and does not suffice to meet Plaintiff's burden in pleading.

■ The statement in the Prospectus that Plaintiff most vehemently takes objection to reads "[t]he Company's expenses are generally fixed and do not vary significantly in the short term with revenues." Complaint, ¶ 36. Again, I fail to discern how this is in any way false and misleading. Again, the statement by its very terms limits itself. The word "generally" is defined as "in disregard of specific instances and with regard to an overall picture." WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY 348 (1965). If Compuware's expenses were unusually high for the second quarter of fiscal 1995, as alleged, then the most that can be said is that an upward deviation occurred during one accounting period. A specific instance of upward deviation is plainly consistent with the statement at issue. Hence, no actionable misrepresentation is alleged.

■ Moreover, even if it be conceded that the statement as to expenses, taken in isolation, somehow created the false impression that expenses for the second quarter of fiscal 1995 would match previously experienced levels and that therefore, the company would be able to realize increases in operational results (i.e., net income, earnings per share) comparable to increases previously experienced, the statement does not so mislead when read in the context of the entire Prospectus. Such an interpretation of the statement essentially casts it as an economic projection, and "[e]conomic projections are not actionable if they bespeak caution." *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1040 (6th Cir.1991) (citing *Polin v. Conductron Corp.,* 552 F.2d 797, 806 n. 28 (8th Cir.1977),

can operations, representing more than 70% of the Company's revenues in fiscal 1994." I find it difficult to comprehend what is so wrong about a company emphasizing that sector of its operations which the complaint itself alleges is important to the financial health of the company. Although the complaint later notes that growth in revenue was substantially attributable to international operations, that does not minimize the fact that North American operations, in terms of absolute dollars (as opposed to rates of year-to-year growth), were very important to the company (unless Plaintiff alleges that North American operations no longer constituted a major source of Compuware revenue, which he did not do in his complaint).

13. However, one is more apt to think that increases in "peak" demand rates would predominate in the calculation of increases of overall demand than one is to think that a single year's growth will predominate in the calculation of total size in operations, as "growth" tends to occur in increments which are usually much smaller than the absolute size of operations, a result of the accumulation of many years' growth. In *Isquith,* on the other hand, two measures of change (total increase of peak demand, total decrease in overall demand) for a much shorter time period (1 year) were at issue, and one might automatically infer that the overall change would be quite sensitive to the change in peak demand in the short run.

*cert. denied,* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129).

An examination of the Prospectus, which is proper in deciding these motions because Plaintiff quoted extensively from it in his complaint, *see Teagardener v. Republic–Franklin Inc. Pension Plan,* 909 F.2d 947, 949 (6th Cir.1990), *cert. denied,* 498 U.S. 1027, 111 S.Ct. 678, 112 L.Ed.2d 670 (1991), reveals that the document did "bespeak caution" as to quarterly fluctuations in operating results [14]. The Prospectus opens by warning that the common stock offered "hereby involves a high degree of risk", and refers the reader to a section entitled "Risk Factors." Prospectus at 1. In this section, the prospective investor is warned that

> [t]he Company's operating results may continue to fluctuate due to numerous factors, including the demand for the Company's products and professional services, the size and timing of customers' orders, the introduction of new products by the Company, changes in the proportion of revenues attributable to licenses versus service fees, product mix, commencement or conclusion of significant services contracts, changes in foreign currency exchange rates, timing of acquisitions and associated costs, and competitive conditions in the industry. Net income may be proportionately affected by a reduction in revenues because only a small portion of the Company's expenses varies with revenues.

Prospectus at 5.

This paragraph alerts the reader to the volatility of operating results. Although it does not explicitly refer to an increase in expenses as a factor upon which fluctuation depends, it alludes to it indirectly. For example, the paragraph refers to timing of acquisitions and associated **costs,** which presumably includes expenses; likewise, the introduction of new products presumably would entail an increase in expenses. Furthermore, the

paragraph discloses that some of Compuware's expenses are in fact variable, albeit a small portion [15].

As to the supposed minimization of the fact that most of Compuware's growth was occurring in risky international markets, I find that the Prospectus adequately warns of this risk. Not only does it spell out precisely what percentage of revenues resulted from international sales for fiscal 1992, 1993, 1994 and the first quarter of fiscal 1995 (revealing a progressive increase), it discloses the risks particular to such sales. Prospectus at 6. Further, the acquisition of an overseas company and the associated risks are also disclosed. Prospectus at 5–6.

The cases cited by Plaintiff, *Virginia Bankshares, Inc. v. Sandberg, Inc.,* 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) and *Mayer v. Mylod,* 988 F.2d 635 (6th Cir. 1993), do not alter the analysis. In the aforementioned cases, the respective Plaintiffs alleged that certain statements attributed to the corresponding Defendants were incorrect, and therefore, misleading; thus, the Supreme Court and the Sixth Circuit proceeded to the materiality question, finding that the presence of cautionary language does not render an otherwise actionable misrepresentation per se immaterial. In this case, by contrast, Plaintiff points to no facially incorrect statement of fact, and hence, the question of whether the Prospectus is at all misleading must be answered before proceeding to materiality. This case is more akin to *Sinay,* which involved an omission of present fact made in the context of predictive statements; indeed, the present case is an even stronger candidate for dismissal then was *Sinay,* for the statements in the Prospectus by and large speak of past operational results rather than projections, and therefore do not necessarily tend to mislead as to what the future will be like. The cautionary

---

**14.** Plaintiff has argued that Defendants inappropriately focus on operating results, and more than likely would take exception to this court taking heed of the cautionary statements in the Prospectus which relate to fluctuations in operating results, rather than fluctuations in expenses. This argument is disingenuous. The change in the level of expenses is interesting precisely because of the impact expenses have on operating

results, which in turn bears on the market price of Compuware stock. Divorcing these concepts serves no useful purpose.

**15.** Plaintiff's allegation that expenses were higher than expected is perfectly consistent with this disclosure.

statements in this context take on greater weight.

### 2. Could the Defendants Be Liable for the Analysts' Reports?

■ As to the claim of fraud perpetrated by means of the analysts' reports, it is clear from the outset that only those would-be members of the proposed Plaintiff class who purchased their stock after the issuance of those reports are entitled to rely on them to support an allegation of securities fraud. I agree with the District Court for the Northern District of Ohio that "[P]laintiff is entitled to base his suit only on statements which were made prior to his purchase of the stock" in a fraud on the market case, "because what is at issue is whether at the time of purchase, the stock's price was inflated by [D]efendants' misstatements...." *Sinay,* 752 F.Supp. at 832 (citing *Marsh v. Armada Corp.,* 533 F.2d 978, 982 n. 3 (6th Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977); *Huang v. Sentinel Gov't Sec.,* 709 F.Supp. 1290, 1294 (S.D.N.Y.1989)). Hence, potential claims based on these reports by investors who purchased stock prior to September 26, 1994 (the date of issuance of the first analyst's report) are categorically dismissed with prejudice.

Potential claims by those who purchased stock after the analysts' reports were issued cannot survive a 12(b)(6) motion unless the allegations in the complaint establish a factual basis for recognizing a breach of some legal duty by Defendants. Plaintiff alleges that Defendants' failure to correct and supplement any misleading statements contained in the analysts' reports constituted a breach of their duty to refrain from deceiving the investing community. Complaint, ¶ 32.

Plaintiff has put forth two theories to support his assertion that Defendants are liable for actionable statements and omissions in the analysts' reports. First, it is alleged that the Defendants were the source of the analysts' information and used them intentionally as a conduit for fraud. Complaint, ¶ 31. The premise is that the analysts were unsuspecting dupes of Compuware who regurgitated what they were told by the company. Whether this allegation, if accepted as true,

supports a claim of securities fraud depends on whether applicable law imposes a duty upon the source of a stock analyst's information to ensure that what is ultimately reported to the public is accurate and complete. Second, it is alleged that Compuware adopted, endorsed, and placed its imprimatur on the analysts' reports. Complaint, ¶ 32. Liability under this theory hinges on whether this allegation suffices to establish a breach of the Defendants' duty to not mislead, assuming for the moment that the reports do contain actionable misstatements.

■ It appears that the question of what liability, if any, may attach to a company and its management when the company provides information to independent stock analysts has not heretofore been addressed by the Sixth Circuit. The Second and Fourth Circuits, however, have addressed the issue. The parties apparently take their respective positions to be inconsistent, for Plaintiff has referenced the opinions of the former authority to support his case, while Defendants have referenced the latter.

A careful reading of the cases of *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156 (2d Cir.1980), and *Raab v. General Physics Corp.,* 4 F.3d 286 (4th Cir.1993), reveals that the positions of the Second and Fourth Circuits are reconcilable. Both essentially predicate liability on the company having had control over the final content of the analyst's reports, although one speaks in terms of "entanglement", *Elkind,* 635 F.2d at 163 and the other refers explicitly to "control", *Raab,* 4 F.3d at 289.

At first glance, *Elkind* does seem to support Plaintiff's argument that Defendants are potentially liable for the contents of the analysts' reports. As Plaintiffs correctly cite, the Second Circuit wrote that "[l]iability may follow where management intentionally fosters a mistaken belief concerning a material fact, such as its evaluation of the company's progress and earning prospects in the current year." *Elkind,* 635 F.2d at 164. However, a careful reading of the facts and holding of the case indicates that the quoted language should not be construed too broadly.

The case does not appear to direct a finding for Plaintiff. In *Elkind,* admittedly some amount of control was exercised by the Defendants, for they reviewed and commented on the analysts' reports to correct errors and misunderstandings. *Elkind,* 635 F.2d at 159. Still, the Second Circuit affirmed the holding that there was no obligation to disclose. Apparently, the court was satisfied that company management had not "made an implied representation that the information they have reviewed is true or at least in accordance with the company's views," *Elkind,* 635 F.2d at 163 (citations omitted), despite the fact that management had participated in some pre-publication review of the analyst's reports.

Similarly, Plaintiff Greenberg has not alleged facts which indicate that Defendants made any such representation. The allegations that Defendants provided "guidance" to analysts "with respect to the Company's business and anticipated revenues and earnings" and that they discussed "relevant aspects of the Company's operations and financial prospects ... in order to cause or encourage them to issue favorable reports ... and to falsely present the operations and prospects of Compuware to the marketplace in an optimistic light", complaint, ¶ 31, does not amount to an allegation of an actionable misrepresentation and smacks of the "puffing" which analysts no doubt encounter regularly. By and large, these allegations simply indicate that discussions about Compuware's operations were ongoing [16].

Furthermore, nothing misleading or false can be gleaned from the allegation that the "Defendants used their communications to analysts to assure them that their estimates of Compuware's business were strong and the Company was on track to achieve strong earnings." Complaint, ¶ 29. Although perhaps not as high as Plaintiff desired, second quarter operating results for the company were indicative of financial health. *See* complaint, ¶ 48. This is the only allegation which refers with any specificity to what was actually supposedly said by Defendants in their conversations with analysts; because it is not actionable, it follows that Defendants cannot be held liable for what they said to the analysts, for Plaintiff has failed to state a claim.

▪ As to Plaintiff's second theory of liability, the allegation in Paragraph 32 of the complaint that the company put its "imprimatur" on the analysts' reports does not suffice. As *Elkind* points out, whether a company has placed its "imprimatur" on a document is a finding to be made by a court. 635 F.2d at 163. In other words, it is a legal conclusion and is an insufficient allegation from which one can infer that Defendants are liable for the contents of the analysts' reports.

Moreover, even if the allegation is taken as meaning that the Defendants signed drafts of the analysts' reports, this does not rise to the level of having control over what was published, and a review of the analysts' reports, which is proper because the complaint quotes extensively from them, establishes that they do not contain the signature of any Defendant and do not credit Defendants with having provided any specific information. Certainly, Plaintiff fails to meet *Raab.* The Fourth Circuit held no liability arose when analysts attributed their statements to a company's management, *Raab,* 4 F.3d at 288. It follows that no liability should attach in this case, where the analysts did not attribute their statements to Compuware or its management.

### 3. Are the Alleged Statements and Omitted Facts Otherwise Actionable?

Although what has been said above has made it clear that Plaintiff has failed to state a cause of action under the federal securities laws, I note that the allegations also fail, for the most part, to establish that Defendants said anything that was materially misleading or failed to state that Defendants omitted to disclose material facts. For instance, Plaintiff's assertion that it is the fact that Compuware's expenses were higher than represented by the company which is material is ludi-

---

**16.** True, part of the allegation is that the "operations and prospects" of the company were "falsely" presented in an optimistic light. Couched in conclusory terms, this allegation is not of the stuff which is actionable. See discussion, *infra* part II.A.3.

crous. Under that reasoning, if the company's expenses were to deviate from publicly-made projections[17] by even $.01, then the materiality requirement would be satisfied. But materiality is defined as that which "would have been viewed by the reasonable investor as having significantly altered the total mix of information made available," *Basic,* 485 U.S. at 248, n. 27, 108 S.Ct. at 992 n. 27, and surely it cannot be said that a $.01 differential in expenses would meet this standard. The point is that Plaintiff had a duty to plead facts sufficient to allow the court to determine whether a claim has been made out, and this, Plaintiff failed to do.

The same can be said as to almost all the other allegations that Defendants withheld or misstated material facts. Other examples include Plaintiff's assertion that North American growth was "essentially flat", and that Defendants "falsely" depicted Compuware's operations in an "overly optimistic light." I could go on at great length, for the complaint is teeming with such vague and conclusory statements, but I choose instead simply to note that these allegations are not actionable.

Similarly, Plaintiff has failed to establish a sufficient factual basis for allowing any inference as to scienter. While it is true that scienter may be pleaded generally, Plaintiff must at least set out some facts which permit this inference. This is particularly true when dealing with projections, which are not actionable unless made in bad faith and without a reasonable basis. *Sinay,* 948 F.2d at 1040–42.

### B. Defendants' 9(b) Motions

■ It should be clear at this point that the complaint, in its entirety, should be dismissed pursuant to FED.R.CIV.P. 12(b)(6). Alternatively, I hold that the complaint does not plead fraud with the requisite specificity under FED.R.CIV.P. 9(b), notwithstanding Plaintiff's argument that 9(b) has been reduced to a near nullity in the Sixth Circuit. I find that I cannot agree with that argument.

Notwithstanding its recognition that the policy of simplicity in pleading codified in Rule 8 of the Federal Rules should be factored in when evaluating Rule 9(b)'s particularity requirement, in *Michaels Building Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir.1988), the Sixth Circuit put forth the following rule for alleging fraud in a manner sufficient to meet the requirements of Rule 9(b): a fraud claim is acceptable if it "specifies the parties and the participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud." The complaint clearly fails to meet this standard.

Nowhere does Plaintiff attempt to identify the time, place and content of the representations made by Compuware management to analysts. Plaintiff objects that he is unable to do this prior to discovery, yet when asked point blank at oral argument whether he needed discovery to fashion a proper complaint, Plaintiff's representative responded in the negative. Further, although the *Michaels Building Co.* court noted that "courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control" 848 F.2d at 680, it should be noted that the analysts are NOT defendants here. Plaintiff attempts to argue that they are under the influence of Defendants, but this seems a bit disingenuous, in light of Plaintiff's theory that the analysts were merely innocent dupes of Compuware.

As noted above, Plaintiff has also failed to identify specifically what facts he believes that the Defendants should have disclosed. I fail to see any justifiable excuse for neglecting to include specific numbers rather than merely alleging that expenses were "higher than expected" or North American growth was "essentially flat." This raises the suspicion that the information was omitted precisely because it would make clear that Plain-

---

**17.** A glance at note 10, *supra,* indicates that Plaintiff has objected to the nondisclosure of the fact that expenses would be "higher than expect-

ed"; Plaintiff has identified no projections by the company as to what its expenses for the second quarter would be.

tiff has no case. Presumably, this is the kind of abuse that Rule 9(b) was designed to prevent.

Much of what has been said above with regard to the 12(b)(6) motions applies here. The allegations examined in Section A of this opinion clearly are too generalized to support a claim of fraud under Rule 9(b). *See* discussion, *infra* part II.A.

### III. *Conclusion*

For the foregoing reasons, Plaintiff's complaint in its entirety is dismissed pursuant to Rule 12(b)(6), or alternatively, under Rule 9(b) of the Federal Rules of Civil Procedure. In addition, leave to amend is denied, for the reason that amendment would be an exercise in futility. IT IS SO ORDERED.